William POLLOCK et ux., Appellants,

v.

Sidney J. BROWN et al., Appellees.

Sidney J. BROWN et al., Appellants,

v.

William POLLOCK et ux., Appellees.

Nos. 11607, 11776.

District of Columbia Court of Appeals.

Argued Sept. 13, 1977.

Decided Nov. 16, 1978.

Rehearing Denied Feb. 15, 1979.

David M. Dorsen, Washington, D. C., for appellants in No. 11607 and appellees in No. 11776.

Mark P. Friedlander, Washington, D. C., for appellees in No. 11607 and appellants in No. 11776.

Before KERN, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

This case arises from a dispute between the landlords (the Browns) and the tenants (the Pollocks) over a commercial lease. The Browns appeal from a judgment entered against them in the net amount of $31,-152.48. That judgment was entered following a hearing which was limited to the question of damages only, after the trial court had dismissed with prejudice the Browns' complaint for rent due and struck their answer to the Pollocks' claim for damages. The Browns assert that the second motions judge erred in dismissing their complaint and their answer to the Pollocks' complaint, leading to the entry of a default judgment against them. Both the Browns and the Pollocks assert that the damages hearing judge erred in various aspects of his determinations as to damages. We conclude that the order striking the Browns' pleadings and entering defaults against them was improperly entered and remand the case for further proceedings.

*The Procedural Facts and Issues*

In September 1974, "Sidney J. Brown, t/a Brentwood Associates," sued the Pollocks in the Landlord and Tenant Branch of Superi-

or Court for possession of certain leased premises (which were used for the operation of a pharmacy and a liquor store) and for past due rent. In response to the Pollocks' motion to dismiss for the plaintiffs' failure to join all of the partners of the landlord partnership, the names of the remaining members of the Brown group were added to the complaint. The suit was continued until February 1975, when the Browns sold the property and were no longer entitled to possession. Because the Landlord and Tenant Branch no longer had jurisdiction [1] and because the Browns did not dismiss their claim for rent, the suit was transferred to the regular civil docket. Upon motion of the Pollocks, the case was consolidated with an action which had been filed by the Pollocks in which they claimed damages for breach of certain warranties and covenants [2] but in which no service had been obtained on the Browns. The Pollocks were then permitted to file their claims for damages as counterclaims in the consolidated case.

The Pollocks sought discovery of the Browns through the production of documents by notice dated October 15, 1975. When, by November 17, the Browns had not complied, the Pollocks obtained an order from the first motions judge requiring production by December 19. The Pollocks also sought discovery through depositions. When the Browns failed to set a date for their depositions, the same judge issued, on December 2, 1975, a second order, reiterating the terms of the first order and further ordering that the Browns appear for depositions on January 15 and 16, 1976. This second order specified that, should the Browns fail to comply in either respect,

"the Complaint [for back rent] and answer [to the Pollocks' counterclaims] of said parties [the Browns] shall be dismissed with prejudice."

The Browns produced the documents as ordered. By agreement of the respective counsel, however, the deposition dates were rescheduled for January 28–29. Whether these dates were firm or merely tentative was disputed by counsel and remains unresolved. No effort was made to obtain a modification of the discovery order. When, on January 27, counsel for the Pollocks was notified that the Browns would not be able to attend on the following days, he sought from another judge an order of default in accordance with the rigid condition of the first judge's order. During the hearing on that motion on February 2, 1976, counsel for the Browns asserted that the deposition dates had been only tentatively agreed upon,[3] that two members of the partnership (including Sidney Brown, the principal partner, whose deposition the Pollocks' counsel had stressed he wished to take last) were abroad, and that he had been advised in the interim by the remaining four partners that they had never authorized their participation in either of the now-consolidated cases.[4] He further argued that the sanction of default was too severe under the circumstances. Counsel for the Pollocks argued that the only issue before the court was the integrity of the first judge's order. The trial court then entered an order of default, and directed the holding of a hearing on damages.

■ There is no merit to the Browns' claim of error in the consolidation of the

1. D.C.Code 1973, § 45–910, provides for summary ejectment procedures by a landlord. The landlord may join in this action a claim for rent. *Id.* at § 45–911. The landlord-tenant relationship is jurisdictional under these statutes. *Spruill v. Brooks*, D.C.Mun.App., 68 A.2d 204, 205 (1949).

2. In general, the tenant in a summary eviction suit is not permitted to counterclaim for relief in excess of the landlord's demand. *See* Super.Ct. L&T R. 5(b). The Pollocks were thus forced to file a separate action.

3. Counsel for the Pollocks at this hearing was not the same attorney who negotiated the new deposition dates, although he was a member of the same firm.

4. Counsel for the Browns proffered letters from these persons in which it was asserted that they had not authorized their appearance. These letters were not made a part of the record of this hearing, but copies of them were appended to the Browns' later motion to reconsider the entry of default.

two cases. Although the Pollocks had not obtained service on the defendants in the Pollocks' original action, the claims presented in that action were also filed as counterclaims in the Browns' action for past due rent (originally asserted to be $6,600). It was within the sound discretion of the trial court to permit the late filing of these counterclaims, especially where, as here, the counterclaims had not been filed in the possessory action only because they were not permitted in the Landlord and Tenant Branch. Super.Ct.Civ.R. 6(b)(2) (enlargement of time).

■ The contentions that the order striking the Browns' complaint and answer to counterclaims was erroneously entered, however, have merit. First, with respect to striking the complaint for rent, we conclude that the court abused its discretion. Under Super.Ct.Civ.R. 37(b), the court is invested with broad discretion in imposing sanctions upon parties who fail to comply with a court order of discovery. *Coleman v. Lee Washington Hauling Co.*, D.C.App., 392 A.2d 1067 (1978). To state that a trial court has "broad discretion" in a given set of circumstances, however, is to state only one portion of the rule of review. The other portion of the rule is that the exercise of discretion must be informed by a standard, for otherwise there would be no situation in which an appellate court could declare an abuse of discretion. Such standards usually develop only over time, with the aid of experience. In many areas of the law, the standards have not been fully delineated, and appellate courts must decide, in each case, whether the trial court action was "arbitrary, fanciful, or clearly unreasonable." *United States v. McWilliams*, 82 U.S.App.D.C. 259, 261, 163 F.2d 695, 697 (1947) (dismissal for lack of prosecution under F.R.Crim.P. Rule 48(b)). *See also Napolitano v. Compania Sud Americana de Vapores*, 421 F.2d 382, 384 (2d Cir. 1970) (denial of request for recess). But in other areas of the law, the standards for in-

formed discretion are more specific. Thus, for example, while a trial court has "broad discretion" in awarding support or alimony in an original order, *Smith v. Smith*, D.C. App., 344 A.2d 221, 223 (1975), when the trial court considers modification of such an order the court's discretion must be reasonably informed by and related to changes of circumstances since the entry of the original order. *Hamilton v. Hamilton*, D.C.App., 247 A.2d 421 (1968). And in *Pouncey v. United States*, 121 U.S.App.D.C. 264, 266, 349 F.2d 699, 701 (1965), the court noted that "[a]lthough a judge has wide discretion in matters respecting competence, . . . he should recognize factors pertinent to its exercise." Such standards or "factors" are not a limitation on the discretion of the trial court but a means by which the appellate courts articulate the difference between a proper exercise of discretion and an abuse of discretion.

In the instant situation, our review of the trial court's discretion is governed by two standards. First, the remedy of dismissal should be granted only in the most severe circumstances. *Koppal v. Travelers Indemnity Co.*, D.C.App., 297 A.2d 337, 339 (1972). Second, the sanction should, where possible, fit the offense. *Oaks v. Rojcewicz*, 409 P.2d 839, 844 (Alaska 1966); Wright & Miller, Federal Practice and Procedure § 2284 (1973). Although the Pollocks may have been hindered in their ability to prosecute their counterclaim because of the Browns' discovery delays, there is no indication that they were in any way prejudiced in their defense of the Browns' claim for rent. Dismissal of the Browns' complaint was, in our view, an excessive sanction. We accordingly reverse that ruling.[5]

■ Turning to the striking of the Browns' answer to the counterclaim, we do not hold that that was an abuse of discretion. Rather, we conclude that the trial court's ruling does not reflect the requisite exercise of its discretion. Although counsel

---

**5.** The Pollocks have asserted in their appeal that the trial court erred in permitting the Browns' rent claim as an offset (finally determined to be $14,350) to the Pollocks' counter-

claim. Although it is true that dismissal of the complaint would have been the law of the case to be followed at the trial on damages, our holding makes moot this issue.

for the Browns asserted the existence of circumstances which arose subsequent to the entry of the first judge's discovery order, those circumstances do not appear to have been considered. No effort was made to resolve the conflicting assertions as to the new deposition dates, nor does it appear that the claim that four of the partners were not properly before the court was considered.[6] Counsel for the Pollocks argued that the only issue was the integrity of the earlier order. However, the sanction proposed in that discovery order—the entry of default upon any deviation from the discovery order, irrespective of cause— could not automatically be binding upon the second judge. Indeed, the first order could not have been binding on the judge who issued it.[7] The imposition of any sanction— particularly the ultimate sanction of a default—requires a bona fide exercise of discretion, and discretion cannot be exercised before the occurrence of the circumstances occasioning that exercise. The record of the proceeding affords no basis upon which we might say that the requisite degree of discretion was exercised. The second judge's reasons for imposition of the sanction of default were articulated neither orally nor in writing, *see Von Der Heydt v. Rogers*, 102 U.S.App.D.C. 114, 251 F.2d 17 (1958), but that ruling appears to have been based solely upon the first judge's unwarranted declaration that any failure of compliance—irrespective of reason therefor— would lead automatically to default.

Our conclusion that the default order was improperly entered is reinforced by two additional factors. First, the record does not reflect that alternative, lesser sanctions were even considered (and rejected) before the most drastic of sanctions was imposed. *Koppal v. Travelers Indemnity Co., supra* at 339. Secondly, Super.Ct.Civ.R. 37(b) requires that the imposition of sanctions be accompanied by an award of expenses against the delinquent party or attorney "unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." The trial court specifically refused to award expenses, yet the apparent inconsistency between this refusal and the other sanctions imposed is unexplained. We therefore vacate the order striking the Browns' answer to the counterclaim and remand for the requisite exercise of discretion.

### Damages

When the second motions judge entered default against the Browns in favor of the Pollocks on the latter's counterclaim (after dismissing the Browns' complaint for past due rent), "a hearing on ex parte proof of damages" was ordered to be held. Pursuant to that direction, a lengthy hearing was held, at which the Browns (as well as the Pollocks) were represented by counsel and introduced evidence. At the conclusion thereof, the hearing judge found in favor of the Pollocks on their counterclaim in the amount of $45,502.48. Against that was offset a finding of rent due in the amount of $14,350.00, resulting in a net judgment in the amount of $31,152.48 in favor of the Pollocks.

Both parties to these appeals quarrel with multiple aspects of the damages findings and conclusions. However, we do not reach

---

6. At oral argument before this court, counsel for the Browns admitted that Sidney Brown, the partner at whose instance the landlord and tenant claim was filed, was the "managing partner." We note that the prevailing view is that a managing partner may commence an action in the names of all the partners to enforce a partnership right. *See* 68 C.J.S. *Partnership* § 200 (1950). Some cases also permit a managing partner to enter an appearance by counsel on behalf of all members in an original action against all partners. *See id.* at § 213b. We need not, however, resolve this issue of law, for it was not resolved or even considered

in the first instance by the trial court. We note, furthermore, that the legal standard for resolving this question, had it arisen in attempted execution against these partners, need not be the same as the standard governing sanctions for non-compliance with an order. The former is a question of law, the latter a matter of discretion.

7. Illustratively, had Sidney Brown been hospitalized with a serious illness which would have precluded the taking of his deposition, the entry of a default against his partnership would have been a clear abuse of discretion.

those issues. Rather, having concluded that the entry of default was erroneous, we remand for a proper exercise of discretion in light of the standards discussed above. If on remand the trial court determines not to enter a default of necessity, the case would be in the posture of being tried pursuant to the jury demand of record (unless waived). In that event the case will be deemed remanded. On the other hand, if the trial court concludes that default should again be entered, the record will be deemed remanded. Upon entry of an order to that effect, the Clerk of the trial court shall certify the record as supplemented to this court and, if necessary, this court can review the propriety of such an order. Should we affirm that order we then could reach the questions raised respecting the damages which were assessed in the so-called "ex parte" damages hearing.

*Reversed and remanded.*