Rosemarie **VERNELL**, et al.,
Appellants,

v.

Kingdon **GOULD**, Jr., et al., **Appellees.**

No. 84–53.

District of Columbia Court of Appeals.
Argued Feb. 7, 1985.
Decided July 10, 1985.

Louis Vernell, Sunny Isles, Fla., with whom J. Brian Tansey, Riverdale, Md., was on the brief, for appellants.

Allen E. Hirschmann, Washington, D.C., for appellees.

Before NEBEKER, MACK and ROGERS, Associate Judges.

ROGERS, Associate Judge:

On appeal from a dismissal of their wrongful eviction action for failure to comply with a discovery order under Super.Ct. Civ.R. 37, appellants[1] contend the trial court abused its discretion by imposing the sanction of dismissal. We agree and reverse.

I

Appellants filed a complaint for wrongful eviction and destruction of property on November 30, 1982, following their eviction from commercial properties on February 19, 1980, after appellees had obtained a judgment for possession.[2] Appellees filed an answer on December 22, 1982, and on January 6, 1983, filed their first set of interrogatories and request for documents. When appellants did not answer or otherwise acknowledge the discovery request, appellees, by letter of February 16, 1983, informed appellants that if the requests were not answered by February 23, 1983,

---

1. Appellants are Rose Marie Vernell, Creative Services International, Inc., and Photographic Institute of America, Inc. Mrs. Vernell is president and a stockholder of both corporations. Appellees are D.F. Antonelli, Jr., a general partner of A & G Partnership, and Kingdon Gould, Jr., a general partner of A & G Partnership.

2. The judgment awarding possession to appellees was vacated, with instructions to dismiss the complaint by order of this court. *Photographic Institute of America, Inc. v. A & G Partnership, et al.,* No. 80–142 (D.C.Nov. 30, 1981).

appellees would file a motion to compel. Still receiving no response, appellees filed a "motion to compel" or, alternatively, to dismiss the complaint on February 24, 1983. On March 14 and 24, Judge McArdle ordered appellants to comply with the discovery request by April 26, 1983, or risk dismissal of their cause of action.[3] On April 26, 1983, appellants filed a motion for an extension of time, until May 27, 1983, to comply with the motion to compel; attached to the motion was an affidavit by Mrs. Vernell stating that she had been out-of-town until April 17, 1983, and thus had no knowledge of the discovery requests. The unopposed motion was granted on May 9, 1983.

On May 27, 1983, appellants submitted answers to the interrogatories and produced approximately 170 pages of documents in response to the request for production.[4] On June 23, 1983, Mrs. Vernell authorized the release of medical records to appellees' attorneys, and she and the corporate appellants filed supplemental answers to the interrogatories and produced additional documents. On the same date, appellees confirmed by letter that appellants' counsel had agreed to supplement appellants' responses to discovery by June 30, 1980, and appellees had agreed to postpone any motion for dismissal from June 24, 1983 until July 1, 1983. By letter of June 30, 1983, appellants described efforts to comply with the discovery request, explained that they were awaiting receipt of certain medical records and an economist's analysis in order to comply with the specificity required

by appellees, and that although continuing their efforts, they would need at least an additional thirty days. On July 1, 1983, appellees orally moved to dismiss appellants' lawsuit. Following argument, Judge Barnes denied the motion and directed appellants to respond to all interrogatories by July 8, 1983, or the lawsuit would be automatically dismissed with prejudice. On July 8, 1983, Mrs. Vernell filed supplemental responses (65 pages of medical records). Appellants also filed their first set of interrogatories and request for documents and a motion to enlarge the time for discovery.

On July 13, 1983, appellees filed a motion to dismiss the complaint with prejudice. Alternatively, appellees sought an order to preclude appellants from presenting at trial expert testimony and testimony regarding the loss of good will, future profits, royalties, customer lists or any value related to loss of business. As grounds for their motion, appellees stated that appellants had "failed to totally comply with the discovery requests," that the response on expert witnesses did not indicate the facts and opinions to which the experts were expected to testify, and that the response about Mrs. Vernell's damages did not provide details about the value and method of computation. Appellants opposed the motion on July 19, 1983, and outlined their compliance with the discovery requests, noting that no pretrial or trial date had been set and asserting that they had been diligent as well as responsive to appellees' discovery requests and had seasonably sup-

**3.** Judge McArdle dismissed the complaint against *A & G Partnership*, No. 80–142 (D.C. Nov. 30, 1981).

**4.** The documents produced by appellants included correspondence between the parties and their counsel, copies of lease agreements, receipts and cancelled checks, repair bills and estimates for repairs on the properties, medical records, school records showing that Mrs. Vernell had returned to school subsequent to the eviction to obtain skills for a new job, records from the Department of Human Services, a list of personal property, including estimates of value, that had been lost or destroyed. Appellants

also listed as expert witnesses: a rehabilitation counselor who would testify concerning the assistance she provided Mrs. Vernell to prepare her for a new career following her illness after the eviction; names of medical doctors who would testify concerning Mrs. Vernell's mental and physical state after the eviction and their diagnoses, prognoses, and evaluations; the name of a psychiatrist who would testify regarding the treatment she had provided Mrs. Vernell and her evaluations, prognosis and diagnosis; and the name of an otolaryngologist who would testify concerning the treatment he had provided and his diagnosis and evaluations.

plemented their responses.[5] By order of July 22, 1983, Judge Barnes denied appellees' motion to dismiss, finding, after argument and "upon review of the record *in toto,* ... that [appellants] have consistently sought to comply with Discovery and the Order of the Court ..."; she ordered appellants to continue to supplement their responses.

On July 28, 1983, appellees filed a motion to enlarge the time for discovery on the basis that appellants had failed to comply timely with discovery. Appellants opposed the motion on August 11, 1983, and proposed, alternatively, that the time for discovery by all parties be extended. On October 13, 1983, Judge Goodrich extended the time for all parties to complete discovery to December 5, 1983, and ordered that a pretrial conference be scheduled for a date in January 1984.

On October 20, 1983, appellees noted appellants' depositions, to begin on October 28, 1983, and requested appellants to bring certain documents at that time.[6] Appellants requested a continuance on October 27 because some of the requested documents had not been located and Mrs. Vernell needed to be prepared for the depositions.[7] Appellees refused to consent to a continuance because discovery was scheduled to be completed on December 5, 1983, and informed appellants that on October 31 they would request the motions judge to

order the depositions to proceed on that date.

On October 31, 1983, appellants explained to Judge Wolf, sitting as a motions judge, that records required for the deposition could not be located and Mrs. Vernell needed time for treatment for her hearing problem and to obtain a hearing aid, which she expected by November 18.[8] Judge Wolf extended the time for discovery for thirty days (to January 5, 1984), ordered appellees to serve their answers to appellants' interrogatories by November 1983, and ordered appellants to appear for depositions on November 21, 1983, or, if unable to appear because of Mrs. Vernell's hearing problem, to appear before the calendar control judge for an investigation after giving notice to appellees' counsel. When appellants' depositions could not be completed as scheduled, counsel appeared for an investigative hearing on November 21, 1983, and the assignment commissioner returned the case to Judge Wolf.

In the proceedings before Judge Wolf on November 21, 1983, Mrs. Vernell's counsel stated that Mrs. Vernell had not appeared for the deposition because she had been unable to get her hearing aid and submitted a letter from C. David Hinton, M.D., an otolaryngologist, to verify this and explain the nature of Mrs. Vernell's hearing impairment.[9] After a discussion about Mrs.

---

**5.** In particular, appellants' opposition stated that Mrs. Vernell had produced medical records and reports which substantially answered the interrogatory about the expert medical witnesses, that the medical records contained detailed medical notations by the treating physician, that appellees would have an opportunity to depose appellants' experts, and that the supplemental responses filed on July 8, 1983, contained sufficient information to enable appellees to proceed.

**6.** Appellees requested documents showing (1) all appellants' customers since 1978; (2) the existence of the personal property damaged during the eviction, including tax returns and insurance policies; (3) the value of the franchise and existence of tapes and photographs lost or destroyed during the eviction; and (4) corporate tax returns for the three corporate years preceding the eviction.

**7.** Mrs. Vernell was to be deposed as an individual and on behalf of the corporations.

**8.** Judge Wolf recalled the earlier possessory action brought by appellees against appellants, *see supra* note 1, and commented he did not recall that Mrs. Vernell had a hearing problem at that time. Appellees' counsel reminded the court that Mrs. Vernell had submitted a doctor's report indicating a problem with her hearing for the prior three years.

**9.** Dr. Hinton's letter of November 18, 1983, stated that Mrs. Vernell was

under [his] professional care for a sensorineural hearing impairment. She is presently in the process of obtaining a hearing aid, but until this is obtained she may have considerable difficulty in understanding normal conversational voice.

Vernell's hearing problem, which she claimed worsened during stress, Judge Wolf found Mrs. Vernell's representation about her hearing problems to be "rather suspect and conveniently self-serving." [10] He ordered that the depositions begin at 1:30 p.m. that day, notwithstanding appellants' counsel's unavailability, and that if they were not completed, they should resume on November 28, November 30, December 2, 1983, at 10 a.m., dates agreed to by both counsel. He also ordered that if appellants did not respond reasonably for the depositions, appellees could apply for appropriate sanctions, including dismissal of the case. He also commented that appellees' counsel could assist Mrs. Vernell with her hearing problem by writing the questions or using a megaphone at the depositions.

The depositions proceeded as scheduled, but were not completed on November 21 because of difficulties encountered with the questioning technique of typing the questions and because Mrs. Vernell had to leave for a previously scheduled doctor's appointment. When she left, she expressed her willingness to continue the depositions at a later date. Appellees' counsel, however, applied to Judge Wolf for sanctions in accordance with his November 21, 1983 order, and a hearing was scheduled for November 23, 1983.

At the outset of the November 23, 1983 proceedings, Judge Wolf noted that Mrs. Vernell had called his chambers to advise she had dismissed her attorney, and that he had read the transcript of her November 21 deposition. Appellees moved to dismiss the complaint on the grounds that Mrs. Vernell had been "totally uncooperative" in completing her deposition and by advising her brother that his deposition scheduled for November 22, 1983, in Florida had been postponed when in fact it had not. A lengthy exchange followed between the judge and Mrs. Vernell, consisting, for the most part, of Mrs. Vernell's requests to the judge that he and counsel speak louder and that she be allowed to move closer so that she could hear. Judge Wolf stated that he did not believe Mrs. Vernell was unable to hear because she responded appropriately to some questions and statement, and he did not think it was because she was lip reading.

Judge Wolf declined to find that Mrs. Vernell had misinformed her brother about his deposition, *see infra* note 11, but concluded that she was "completely frustrating the orderly processes of this court and of her case" and was in violation of his order since she did not "respond reasonably" for the deposition. Therefore, he ruled that sanctions should be imposed under Super.Ct.Civ.R. 37, and dismissed the lawsuit; he denied appellees' request for attorney's fees on the ground that while they were probably justified, he was "afraid [he was] dealing with a sadly misguided woman" and the sanction of dismissal with prejudice was sufficient. Appellants' motion for reconsideration [11] was

---

**10.** Judge Wolf stated:

> That testimony or that representation by [Mrs. Vernell] is further suspect by Dr. Hinton's statement that she is in the process of obtaining a hearing aid. A hearing aid would not, it seems to me a layperson in such medical affairs, remedy a hearing loss that shuts down by reason of nervousness under stress. And I therefore find that there is an insufficient explanation for her hearing loss.

Judge Wolf also stated he did not believe Mrs. Vernell's protestations about being unable to hear although he acknowledged it was "a potentially subjective matter that is impossible to probe definitively."

**11.** Attached to the motion for reconsideration was an audiological evaluation of November 1, 1983, which indicated that Mrs. Vernell had:

> a moderate to severe, sensorineural hearing loss for pure tones in the left ear ... and a severe to profound, sensorineural hearing loss for pure tones [in the right ear] .... [S]uccess should be experienced with a hearing aid fitted to the left ear. A complete Hearing Aid Evaluation is indicated at this time.

Also attached to the motion for reconsideration was an affidavit by Mrs. Vernell's brother, a member of the Florida Bar since 1951, stating he had been given very short notice by appellees of his deposition and because of an irreconcilable conflict (whereby he would be in court 150

granted by Judge Wolf on December 13, 1983, and on the same date, by fiat, he upheld the dismissal. Appellants timely filed a notice of appeal from the December 13 affirmance of the dismissal.

## II

 Superior Court Civil Rule 37 empowers the trial court to impose sanctions for failure to comply with the discovery process.[12] In reviewing a trial court's imposition of sanctions, this court may reverse only if the trial court has abused its discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976), *cited in Himmelfarb v. Greenspoon*, 411 A.2d 979, 982 (D.C.1980) and *Coleman v. Lee Washington Hauling Co.*, 392 A.2d 1067, 1069 (D.C.1978). In exercising its discretion, the trial court must act in accordance with certain standards, two of which are that "the remedy of dismissal should be granted only in the most severe circumstances ... [and] the sanction should, where possible, fit the offense." *Pollock v. Brown*, 395 A.2d 50, 52 (D.C. 1978) (citations omitted). In deciding what constitutes "severe circumstances," two factors must be considered: whether the failure to comply was willful, and whether

the party requesting discovery was in any way prejudiced by the failure to comply with the discovery request.[13] *Braxton v. Howard University*, 472 A.2d 1363, 1365 (D.C.1984). An abuse of discretion will exist where the trial court imposes a sanction which is too strict or is unnecessary under the circumstances, *Himmelfarb v. Greenspoon, supra*, 411 A.2d at 982, as reflected in all pretrial proceedings prior to the sanction. *Ungar Motors v. Abdemoulaie, supra* note 13, 463 A.2d at 687 (citing *U.S. Merchandise Mart, Inc. v. D & H Distributing Co.*, 279 A.2d 511, 513 (D.C.1971)). To enable meaningful appellate review, the trial court must also "somehow indicate" that it has considered lesser sanctions. *Braxton v. Howard University, supra*, 472 A.2d at 1366. Consistent with our standard of review, we conclude Judge Wolf's dismissal of appellants' claim fails to "reveal[] the kind of informed decision worthy of presumed validity." *Koppal v. Travelers Indemnity Co.*, 297 A.2d 337, 339 (D.C. 1972).

Upon review of the pretrial proceedings, three relevant periods emerge: (1) from the filing of the complaint until Mrs. Vernell became aware of appellees' discovery requests; (2) from appellants' first responses

---

miles away) on November 22, he had instructed his secretary on the date he was served with notice of the deposition to make immediate arrangements to reschedule it, and had been advised the deposition would be rescheduled.

On November 23, 1983, Mrs. Vernell had claimed that her counsel had told appellees' counsel only that her brother would be out of town. She testified that she had not spoken to her brother or his office about a postponement of the deposition.

**12.** Rule 37(b) provides in pertinent part:

(b) FAILURE TO COMPLY WITH ORDER. (2) SANCTIONS BY THIS COURT. If a party ... fails to obey an order to provide or permit discovery ... the Court may make such orders in regard to the failure as are just, and among others the following:

\* \* \* \* \* \*

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or render-

ing a judgment by default against the disobedient party;

\* \* \* \* \* \*

Rule 37(d) provides in pertinent part:

*Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection.* If a party ... fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice.... [T]he Court on motion may make such orders in regard to the failure as are just, and among others, it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this Rule.

\* \* \* \* \* \*

**13.** Rule 37 was amended in 1970 to make clear that willfulness is no longer a prerequisite for the imposition of sanctions, but is only relevant in deciding what sanctions are appropriate for failure to comply with discovery. *Ungar Motors v. Abdemoulaie*, 463 A.2d 686, 688 n. 8 (D.C. 1983) (citing *Coleman v. Lee Washington Hauling Co., supra*, 392 A.2d at 1070 n. 1).

to discovery to Judge Barnes' order and finding of July 22, 1983; and (3) from appellees' July 28, 1983 motion to enlarge the time for discovery, which resulted in an extension of the period of discovery for all parties until December 5, 1983, through appellees' taking of appellants' first depositions until dismissal of the complaint. The explanation for the first period of inaction by appellants is uncontested: Mrs. Vernell was unaware of the discovery requests. In the second period, appellants filed timely responses, supplemented their responses on three occasions, and apprised appellees of appellants' efforts to respond with greater specificity. Appellees' three motions to dismiss were denied, the last on July 22, 1983, when Judge Barnes reviewed the pretrial proceedings and found appellants had "consistently sought to comply with Discovery and the Order of the Court...." In the third period appellants' depositions were scheduled to commence on October 28, 1983 and, by court order, to continue if necessary for several days, and appellees filed their first answers to appellants' interrogatories on November 10, 1983. We hold that the trial court erred in finding that Mrs. Vernell had willfully violated its order of November 21, 1983, and that her conduct warranted dismissal of the complaint.

First, the record does not support the trial court's finding that Mrs. Vernell failed to respond appropriately at the November 21, 1983 deposition. The transcript of the November 21 deposition suggests there was a high level of tension, and that typing the questions did not resolve the problem of Mrs. Vernell's inability to hear the answers which her substitute counsel was giving to appellees' counsel's questions. Although her answers during the deposition were not to appellees' counsel's liking, it is unclear how much fault may be assessed to Mrs. Vernell and how much may be assessed to appellees' counsel and to the attorney substituting for Mrs. Vernell's regular counsel. Her substitute attorney's answers were significant since substitute counsel twice told appellees' counsel that appellants had not brought the requested records despite Mrs. Vernell's claim to the contrary. In any event, when she left the deposition, she expressed her intention and willingness to resume the deposition at a later date, which was consistent with Judge Wolf's order of November 21, 1983 that the deposition could be continued if not completed that day.

Accordingly, even if Mrs. Vernell had not previously scheduled a doctor's appointment,[14] we are unconvinced that she would have been unjustified in ending the deposition on November 21 when it became clear that it was futile to continue without her regular counsel or a knowledgeable associate. Mrs. Vernell advised Judge Wolf on November 23, and in her November 22 telegram notifying him that she had dismissed her counsel, that substitute counsel, with whom she had previously experienced problems, had ridiculed and laughed at her during the deposition.

■ Second, the record does not support the trial court's finding that Mrs. Vernell was "completely frustrating the orderly processes of the court" as would warrant dismissal. Nothing happened between Judge Barnes' ruling and the parties' appearance before Judge Wolf on November 23, 1983, which justified a dismissal under Rule 37. This case does not involve either a continued failure to provide answers after repeated requests by appellees, *Coleman v. Lee Washington Hauling Co.*, *supra*, 392 A.2d at 1070, or a deliberate failure to cooperate with appellees after a court order to do so. *See Firestone v. Harris*, 414 A.2d 526, 527 (D.C.1980); *Himmelfarb v. Greenspoon*, *supra*, 411 A.2d at 982. Even at the time the complaint was dismissed, appellants were attempting to comply with the court order of November 21, 1983. The problems which arose at the

14. The record does not reflect whether Judge Wolf was advised on November 21, 1983 about Mrs. Vernell's doctor's appointment.

deposition were largely a result of appellants' counsel's scheduling problem and Mrs. Vernell's documented hearing problem. Although Judge Wolf disbelieved Mrs. Vernell's claim of a hearing loss caused by nervousness, neither his disbelief nor appellants' record in responding to appellees' discovery requests demonstrates appellants' conscious failure to comply with discovery in a manner that would support the extreme sanction of dismissal. *See Koppal v. Travelers Indemnity Co., supra,* 297 A.2d at 339. Furthermore, the dismissal occurred when more than one month remained for completion of discovery. The imposition of the ultimate sanction of dismissal "requires a bona fide exercise of discretion, and discretion cannot be exercised before the occurrence of the circumstances occasioning that exercise." *Pollock v. Brown, supra,* 395 A.2d at 53.

Third, the trial court's finding that Mrs. Vernell was feigning a hearing problem is unsupported by the record. Uncontroverted medical evidence established that Mrs. Vernell's hearing was impaired and that she needed a hearing aid to hear well enough to respond clearly and correctly.

Accordingly, since the trial court's findings in support of its dismissal of the case are not supported by the record, we reverse and remand the case for further proceedings.[15]

*So ordered.*

---

**15.** In view of our disposition, we do not reach the issues of prejudice to appellees or whether the trial court failed to consider lesser sanctions or appellants' contentions that Judge Wolf was biased and had prejudged the case. *See Ehrlich v. Perper,* 189 A.2d 122, 122–23 (D.C.1963), *rev'd on other grounds,* 119 U.S.App.D.C. 150, 337 F.2d 546 (1964); *Scott v. Scott,* 137 A.2d 722, 725 (D.C.1958).