**TECHNIARTS VIDEO, INC., et al., Appellants,**

v.

**1631 KALORAMA ASSOCIATES, et al., Appellees.**

No. 89–174.

District of Columbia Court of Appeals.

Argued Jan. 23, 1990.
Decided April 5, 1990.

Stephen C. Glassman, Washington, D.C., for appellants.

Marc S. Moskowitz, Washington, D.C., for appellees.

Before STEADMAN and FARRELL, Associate Judges, and KERN, Senior Judge.

FARRELL, Associate Judge:

Appellant, Techniarts Video, Inc. (Techniarts), appeals from an order of the Superior Court dismissing its amended complaint with prejudice. In the original complaint, Techniarts alleged that appellees, 1631 Kalorama Associates (Kalorama), a District of Columbia general partnership, had breached an oral contract to compensate Techniarts on an hourly basis for engineering and consulting services provided for the conversion of a warehouse and roller skating rink in Northwest Washington, D.C. to a television and movie production studio. Citing various omissions in the original complaint, Techniarts sought and, in a June 23, 1987 order, received leave to amend the complaint. The revised complaint, however, went beyond the scope of that order in several ways, the most significant of which was an increase in the *ad damnum* clause and a change in the theory of recovery from one based on an hourly rate to one computed by taking a percentage of the total cost of the project. The motions judge then granted Kalorama's motion to dismiss the complaint with prejudice on the ground that it exceeded the order permitting amendment.

On appeal, Techniarts contends that given the preference this court has expressed for a trial on the merits, the absence of significant prejudice to Kalorama, and the fact that the trial court did not consider less severe sanctions, the dismissal was an abuse of discretion. We agree and reverse.

## I.

Techniarts is owned and managed by Judith Deitz and her husband William Moore. It provides a variety of services related to the construction of sound, television and motion picture studios. Moore contends that in May of 1985 he entered into an agreement with Edward T. Morgan, a general partner of Kalorama,[1] whereby Techniarts would provide the necessary services for construction of the studio and Morgan would pay for those services once he had obtained construction financing. Morgan denies that any such agreement existed.

In their original complaint filed on August 4, 1986, Techniarts alleged breach of an oral contract by which defendants Morgan, Kalorama, and Citadel, Inc., had promised to pay Techniarts for its time and services and to reimburse it for all sums expended to subcontractors or otherwise on Kalorama's behalf. The named plaintiff in the complaint as filed was Techniarts Video, Inc., a Maryland corporation. Techniarts sought a total of $134,191.38 based upon the time it had spent on the project and the hourly rates for the various tasks performed.[2] In an affidavit in support of a motion for summary judgment filed contemporaneously with the complaint,[3] Moore stated that this sum included $57,305.13 in costs expended by Techniarts to various subcontractors. In his deposition on April 17, 1987, by contrast, he conceded that Techniarts had not actually paid the $57,305.13 to its subcontractors but that it continued to hold these bills and still owed this money.

On April 24, 1987, appellees filed a motion to dismiss and for costs on the grounds, *inter alia*, that Kalorama, as a District of Columbia general partnership, could not be sued in its own name, and that Moore's affidavit had misrepresented that Techniarts expended $57,305.13 to its subcontractors. Kalorama asserted that this misrepresentation was willful and sought sanctions pursuant to Super.Ct.Civ.R. 11 (1989). The motion to dismiss and the request for sanctions were denied by Judge Salzman on June 23, 1987.[4]

In response to the motion to dismiss, Techniarts, on May 22, 1987, filed a motion for leave to amend the complaint.[5] The motion sought to name Techniarts as a District of Columbia general partnership with Moore and Deitz as general partners, to add an additional count seeking recovery in *quantum meruit*, and to increase the *ad damnum* clause to reflect more accurately the firm's time damages. Although the motion was granted on June 23, 1987,[6] the court's order provided leave only to indicate that the plaintiff was a District of Columbia general partnership and to add a

---

1. Techniarts alleged that Morgan was acting either individually or on behalf of Kalorama or Citadel, Inc., a District of Columbia corporation involved in commercial real estate, warehouse storage and restaurant management.

2. Kalorama filed a counterclaim seeking to recover a $10,000 rent payment for use of the studio allegedly diverted by Techniarts.

3. The motion for summary judgment was denied by Judge Webber on October 29, 1986, and discovery commenced shortly thereafter.

4. On July 24, 1987, Judge Salzman denied Kalorama's motion for reconsideration, clarification, for oral argument, to stay discovery, and/or for certification as an interlocutory appeal.

5. Techniarts' original counsel had withdrawn on or around May 4, 1987, after his need to appear as a witness became apparent. Original counsel for Kalorama withdrew for the same reason.

6. Judge Salzman issued several other orders on June 23rd. These included a protective order stating that Techniarts was not required to produce any personal or corporate tax returns, an order requiring Techniarts to produce certain contracts it had entered into with subcontractors which were referred to in Moore's deposition, and an order extending discovery until October 1, 1987, and indicating that no further extensions would be allowed.

count sounding in *quantum meruit.*[7]

Kalorama filed a second motion to dismiss on July 30, 1987, asserting that Techniarts had failed to file its amended complaint within 20 days as required by Super. Ct.Civ.R. 15(a).[8] Techniarts responded that Kalorama's reliance on Rule 15(a) was misplaced since that rule only imposes a 20 day limit when a pleading has been *dismissed* or *stricken* with leave to amend; in the present case the original complaint was neither dismissed nor stricken, nor had Judge Salzman imposed any time limit in the order allowing amendment. Before the motion was considered, however, Techniarts, on August 19, filed its amended complaint.

The amended complaint, in addition to adding a count in *quantum meruit,* went beyond Judge Salzman's order in several ways. First, Techniarts called itself a Maryland (rather than District of Columbia) general partnership; second, the complaint added Charles Lamb, the other general partner of Kalorama, as a party defendant; third, it increased the *ad damnum* clause; and fourth, it changed the theory of recovery from a sum certain amount based upon the time Techniarts had spent on the project to a straight 10% of the total cost of construction. Techniarts estimated the construction costs at $6,505,000 and therefore assessed its damages at $650,500, a more than four-fold increase from its original complaint. Arguing that this 10% figure represented a reasonable value for its services by industry standards, Techniarts claimed the same amount of damages in the *quantum meruit* count.

In light of the amended complaint, Kalorama filed a supplement to its July 30 motion to dismiss calling for dismissal on the ground that the amended complaint went beyond Judge Salzman's order, and again sought sanctions against Techniarts for misrepresentations.[9] After a hearing on October 8, 1987, Judge Goodrich ruled from the bench that the amended complaint would be dismissed with prejudice because it had exceeded the scope of Judge Salzman's June 23rd order. He denied Techniarts' motion to reconsider on February 16, 1988, concluding:

> Plaintiffs' Motion for Reconsideration presents no new facts or arguments, upon which relief may be granted. The Court believes that in light of the misrepresentations made by the Plaintiffs and the fact that the amended complaint went beyond the scope of Judge Salzman's order, it was correct in dismissing the Plaintiffs' complaint with prejudice.[10]

Techniarts appeals from this order.[11]

## II.

On appeal, Techniarts contends that if its amended complaint did indeed exceed the scope of Judge Salzman's order, the additions were not the result of any willful misrepresentations and were not prejudicial to Kalorama. Thus, rather than imposing the extreme sanction of dismissal with prejudice, it contends Judge Goodrich should

7. Counsel for Techniarts contends that it inadvertently omitted the increase in the *ad damnum* from the order it prepared, and that neither Techniarts nor Judge Salzman noticed the omission when the order was signed.

8. Kalorama also sought a protective order staying discovery until Techniarts filed its amended complaint and Kalorama had an opportunity to plead to that complaint.

9. These "misrepresentations" included Techniarts transformation in the pleadings from a Maryland corporation to a District of Columbia general partnership and finally to a Maryland general partnership. Kalorama also cited the change in the nature of the damages and the computation of those damages.

10. Judge Goodrich did not specify the misrepresentations to which he was referring nor did he state the authority under which he was dismissing the amended complaint. We assume that Super.Ct.Civ.R. 41(b) served as the basis for the dismissal. That rule gives the trial court the authority to dismiss any claim or action "[f]or failure of the plaintiff to prosecute or to comply with ... any order of the [Superior] court." *See LaPrade v. Lehman,* 490 A.2d 1151, 1155 (D.C. 1985).

11. This order was made final after the parties stipulated to dismissal of appellees' counterclaim without prejudice so that the appeal could be taken. Judge Nunzio dismissed the counterclaim in a January 17, 1989 order.

have considered lesser sanctions and at most struck those portions of the complaint that went beyond the order to amend.

 As a general matter, dismissal under Rule 41(b) lies within the exercise of the trial court's discretion, which this court will not disturb absent clear evidence of abuse. *See Frazier v. Center Motors,* 418 A.2d 1018, 1020 (D.C.1980). Given the severity of dismissal as a sanction, however, and the oft-stated preference for trial on the merits, this discretion must be exercised carefully and in accordance with standards identified in our cases. *Brown v. Cohen,* 505 A.2d 77, 78 (D.C.1986); *LaPrade v. Lehman, supra* note 10, 490 A.2d at 1155; *Shimer v. Edwards,* 482 A.2d 399, 400–01 (D.C.1984); *Frazier, supra,* 418 A.2d at 1020; *Pollock v. Brown,* 395 A.2d 50, 52 (D.C.1978); *Garces v. Bradley,* 299 A.2d 142, 144 (D.C.1973). Thus, dismissal should be adopted as a remedy only in extreme circumstances and only after the trial court has considered lesser sanctions. *Granville v. Hunt,* 566 A.2d 65, 66 (D.C. 1989); *LaPrade v. Lehman, supra,* 490 A.2d at 1155; *see also District of Columbia v. Greene,* 539 A.2d 1082, 1084 (D.C. 1988); *National Voter Contact, Inc. v. Versace,* 511 A.2d 393 (D.C.1986); *Vernell v. Gould,* 495 A.2d 306, 311 (D.C.1985); *Braxton v. McNamara,* 429 A.2d 183, 184 (D.C.1981).[12] The inquiry should include whether the conduct calling for sanctions was willful and whether the other party was prejudiced by it, *Vernell, supra; Brown v. Cohen, supra,* 505 A.2d at 78–79; *Garces, supra,* 299 A.2d at 144–45; and the sanction imposed should, wherever possible, be tailored to the offense. *Pollock v. Brown, supra,* 395 A.2d at 52; *see also Peek v. District of Columbia,* 567 A.2d 50, 54 (D.C.1989); *Vernell, supra* (trial court abuses its discretion where the sanction is too strict or unnecessary under the circum-

stances). These factors serve as a basis for determining whether or not the trial court has abused its discretion. *Pollock, supra,* 395 A.2d at 52.

 In the present case, the parties do not dispute that the amended complaint went beyond the scope of Judge Salzman's order. The only point in dispute is whether this action warranted dismissal. We conclude that it did not. Any prejudice to Kalorama's ability to defend resulting from the increase in the *ad damnum* clause or the change in the theory of recovery was minimal. Indeed, Kalorama can only be said to have been truly surprised by the first of these unauthorized changes, for Moore testified during his deposition that he told Morgan early in their relationship that he expected Techniarts' fee to be approximately 10% of total construction costs which he estimated at $3,505,000, an estimate that rose to $6,505,000 in the amended complaint.[13] Even if Kalorama was surprised by the changes, the trial court had means available for dealing with the prejudice short of dismissal. At the time the court acted, no trial date was in the offing.[14] Kalorama, therefore, would not have been prejudiced if discovery were extended to allow it time to respond appropriately to the amended complaint. In particular, Kalorama asserts that in taking Moore's deposition it was guided by the measure of damages—hours spent on the project—set forth in Techniarts' complaint (but see discussion, *supra*); if this was so, the court could have ordered the deposition retaken at Techniarts' expense. Further, since an order of the court limiting the scope of amendment of a complaint is not to be treated lightly, we think Judge Goodrich would have acted within his discretion in striking the amended allegation of a contract for a percentage fee, thus requir-

---

**12.** Although some of these cases involved dismissal under Super.Ct.Civ.R. 37 or 12–I(e), the same considerations govern dismissal under Rule 41(b). *See National Voter Contact, Inc. v. Versace, supra,* 511 A.2d at 397–98; *Braxton, supra,* 429 A.2d at 184–85 n. 1.

**13.** With regard to the other unauthorized changes—the addition of Lamb as a party defen-

dant and the designation of Techniarts as a Maryland general partnership—appellees do not even point to any prejudice. Accordingly, these changes could not serve as a basis for dismissal.

**14.** The only record indication is that a trial date had been set for January 21, 1989.

ing plaintiffs to go to trial on the original complaint supplemented by the authorized count in *quantum meruit.* We do not dictate the sanctions the court could have employed. What it could not do, however, consistently with our decisions, is dismiss the entire action with prejudice when lesser remedies were at hand and meaningful prejudice to Kalorama was indiscernible.

Appellees contend, nevertheless, that dismissal was appropriate as a sanction for what they describe as "ongoing misrepresentations" by appellants. If this characterization were correct, dismissal might well have been appropriate for something akin to "willful" misconduct, *Vernell, supra.* But although Judge Goodrich referred to misrepresentation by Techniarts in denying the motion to reconsider, he did not specify the actions he had in mind. Upon our own review of the record, we can find nothing rising to the level of deliberate misrepresentation. Even Kalorama, in its brief, points only to what in essence was a series of inconsistent positions by Techniarts on whether, for example, Techniarts was a Maryland corporation, a D.C. general partnership, or a Maryland general partnership. Likewise, whether Moore had actually expended $57,000 (as stated in his affidavit) or had not paid the money but was liable to others for it (as he stated in deposition) might be grounds for impeachment at trial but does not illustrate a pattern of misrepresentation. We thus conclude that the only arguable support for the dismissal was the fact that the amended complaint went beyond the terms of Judge Salzman's order, and this was insufficient to support that exceptional remedy.

The order dismissing the complaint with prejudice is, accordingly,

*Reversed.*