**DISTRICT OF COLUMBIA, Appellant,**

v.

**Andrew J. SERAFIN, et al., Appellees.**

**No. 89–CV–410.**

District of Columbia Court of Appeals.

Argued Dec. 18, 1990.
Decided Dec. 8, 1992.

---

Martin White, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel, at the time the brief was filed, and Charles Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellant.

Michael A. Mays, Fairfax, VA, for appellees.

Before TERRY, FARRELL and WAGNER, Associate Judges.

PER CURIAM:

This case involves a dispute between the District of Columbia and appellees, Andrew J. Serafin and Marilou S. Serafin, over water and sewer bills for appellees' sixty unit apartment building located at 1458 Columbia Road, N.W. in the District of Columbia. The trial court dismissed appellant's complaint pursuant to Super.Ct.Civ.R. 41(b) for appellant's failure to comply with an order of the court.[1] Appellant argues on appeal that the trial court erred in concluding that the District violated a court order when it removed a water meter from appellees' building for testing and that the trial court abused its discretion in dismissing the case. Whether or not the District technically violated an order prohibiting removal of the meter, the record before us reveals no evidence of a deliberate violation of a court order such as would justify the sanction of dismissal. Since, in addition, we conclude that the judge failed to consider lesser sanctions for the alleged unauthorized removal, we vacate the dismissal and remand the case for further proceedings consistent with this opinion.

I.

The District commenced this action by filing a complaint against appellees for failure to pay the full amount of water and sewer charges which the District claimed then totalled $54,648.32, covering the period December 27, 1978 through March 4, 1985. The District subsequently amended its complaint to include an arrearage accumulated to March 10, 1987, making the total ad damnum $113,183.13. Appellees asserted as a defense, *inter alia*, that their water meter was defective and, therefore, appellant's billing was excessive and inaccurate.

Following extensive discovery, the case was scheduled for a status and pretrial conference on February 9, 1987. The pretrial judge, Judge William S. Thompson, entered an order following that conference, a part of which precipitated the dispute which resulted in dismissal of the action. In continuing the scheduled conference, the pretrial judge indicated in the statement of proceedings that the court had reviewed the pleadings and discussed settlement with the parties, that the case was not in a posture for settlement or pretrial, and that the parties agreed to a continuance. The following pertinent language appears in the court's statement of proceedings:

The court *sua sponte* continues this case for the following reasons:

\* \* \* \* \* \*

2. To afford an inspector from the District of Columbia an opportunity to inspect the water meter at the premises located at 1458 Columbia Road, N.W., Washington, D.C.

\* \* \* \* \* \*

The court rescheduled the trial date for March 31, 1987.

On March 10, 1987, representatives of the D.C. Water and Sewer Department removed the meter from the appellees' building and took it to the District's facility for testing. According to an affidavit of appellees' employee, Robert Sheldon, the District's employee scraped sediment, rust, and other materials from the meter before removing it. It was Mr. Sheldon's opinion that such a build-up could affect substan-

---

1. Appellant also relied on Super.Ct.Civ.R. 37(b)(2) in support of its motion to dismiss. The trial court did not specify the rule under which it dismissed the case; however, the motion was more appropriate for consideration under Super.Ct.Civ.R. 41(b). Our disposition would be the same under either rule, given the relevant considerations addressed herein.

tially the accuracy of the meter readings and result in higher billings. According to the deposition of Lindsay Rucker, a supervisor in the District's "Meter Branch," the meter contained only a small amount of debris, and only part of the plumbing, rather than the meter itself, was scraped to prevent rust from appearing in the building's water supply. Appellees' employee was also present during the testing at the District's facilities, and he identified what he perceived to be numerous flaws in testing. The meter which the District removed had been installed on September 14, 1982 to replace one which the District discovered had a broken "seal to the by pass around the meter." The District did not return the meter it had tested in March until June 1987 when Mr. Sheldon picked it up.

Appellees filed a motion to dismiss and a motion to strike, primarily based on appellant's alleged intentional violation of two orders: Judge Thompson's order of February 10, 1987 and Judge Nunzio's order of May 5, 1987.[2] Judge Goodrich denied both motions without a hearing; however, he subsequently granted a motion to reconsider and ordered a hearing to be held. The judge to whom the motions were next assigned certified the case back to Judge Thompson and Judge Nunzio, noting that he was not in a position to determine the intent of the order of February 10th, the interpretation of which was disputed, and that although appellees contended that Judge Nunzio ordered delivery forthwith, Judge Nunzio's order was silent on the subject.

Judge Thompson scheduled an evidentiary hearing on the Motion to Dismiss. In a letter to counsel for the parties, signed by his law clerk, the following appears with respect to that hearing:

Judge Thompson has asked me to remind you that the only evidence to be presented at the hearing, and thus considered by

the court, is that evidence pertaining to the specific language in the order in question. Therefore, the only witnesses which [sic] will be allowed at the hearing are those who were present at the particular pre-trial settlement conference resulting in the order in question. Further, no evidence will be allowed to be presented unless it was "in evidence" at the time the order was signed, and thus was available for consideration by the court at that time.

On February 8, 1989, the parties appeared before Judge Thompson for a hearing on the motion. Counsel for appellees made a lengthy opening statement specifying the reasons for the motions. The court stated that the only matter before it for consideration was the motion to dismiss. During opening statement, appellees' counsel requested that the court consider the deposition testimony of its expert witness, George Anderson. Appellant's counsel objected to appellees' efforts to have the court consider the depositions on file because it would greatly expand the scope of the evidence specified in the letter to counsel scheduling the hearing. Appellees requested dismissal as a sanction, contending that they were prejudiced in their ability to prove the extent to which the meter over-registered.

The court then embarked upon extensive efforts to settle the case, and to that end, inquired of appellees' counsel about the amount of damages resulting from "the failure of the D.C. Government to abide by the court's order if, in fact, D.C. Government did not abide by it."[3] The court requested appellees to present testimony concerning damages to allow the court to better discuss settlement with the responsible District officials. In response to the request, appellee, Andrew Serafin, testified under oath regarding the problem with the water meter, the efforts he had made to settle the case, and the amount of the

---

2. The order of May 5, 1987 required appellant, *inter alia,* to return the meter it caused to be removed on March 10, 1987 to allow appellees an opportunity to test it. Judge Thompson ultimately denied as moot appellees' Motion to Strike evidence pertaining to meters used be-

tween 1976 and September 1982 and the Rockwell meters used thereafter.

3. The court indicated it would have to recuse itself if the case went to trial because of its extensive involvement in these settlement discussions.

attorney's fees he had incurred. Further discussion of settlement with counsel followed Mr. Serafin's testimony, including the District's claim that appellees owed delinquent taxes. Before adjourning, counsel for appellees reminded the court that the only testimony taken had been testimony regarding the issue of settlement. The court responded that it had photographs submitted by appellees showing the condition of the meter. The court also reached a specific amount for settlement, which it viewed to be fair, and continued the case for a status hearing and settlement conference on February 13, 1989.

Counsel for the District never made an opening statement at the motions hearing, nor was there an opportunity for appellant to offer evidence.[4] During the course of that hearing, the attorney for appellees suggested to the court a number of possible sanctions, including dismissal, an award of attorney fees, and the striking of evidence of the meter readings taken from the meter in question.

The proceedings at the status and settlement conference were not transcribed. However, according to the memorandum of status and settlement conference signed by Judge Thompson on February 13, 1989, the parties had protracted but unsuccessful, settlement discussions. That same date, without further hearing, the court entered an order granting appellees' motion to dismiss with prejudice, denying appellees' motion for sanctions without prejudice, and denying appellees' motion to strike as moot.

## II.

■ The trial court has authority to dismiss an action when a plaintiff fails to comply with an order of the court. Super.Ct.Civ.R. 41(b); *Massengale v. 3M Business Products Sales, Inc.*, 504 A.2d 574, 579 (D.C.1985); *LaPrade v. Lehman,*

490 A.2d 1151, 1155 (D.C.1985). Dismissal is an extreme sanction which should be granted only sparingly or in extraordinary circumstances. *Hackney v. Sheeskin*, 503 A.2d 1249, 1253 (D.C.1986); *LaPrade*, 490 A.2d at 1155. Dismissal under the rule is reviewable for an abuse of discretion. *Techniarts Video, Inc. v. 1631 Kalorama Associates*, 572 A.2d 1051, 1054 (D.C.1990); *Hackney*, 503 A.2d at 1253. Because dismissal is such an extreme sanction and because of the principle preferring trial on the merits, the trial court's exercise of discretion must be undertaken with care and consistent with well-established standards. *Techniarts*, 572 A.2d at 1054; *LaPrade*, 490 A.2d at 1155. In exercising its discretion under the rule, the trial court should consider first other lesser sanctions. *Techniarts*, 572 A.2d at 1054. The sanction must also be tailored to the circumstances it is designed to address. *Id.* Among the factors which the trial court should consider are: (1) the nature of the party's conduct, including whether it was willful; (2) the length of any delay in complying with the court's order; (3) the reasons for the delay; and (4) any prejudice to the opposing party. *Id.; Hackney*, 503 A.2d at 1253. Dismissal should not be imposed where the failure of a party to comply with the order is inadvertent or excusable. *In re C.S. Crawford & Co.*, 423 F.2d 1322, 1325 (9th Cir.1970). Applying these principles, we consider whether the trial court abused its discretion in dismissing this case.

■ The trial court clearly abused its discretion in granting the motion to dismiss. First, the trial court failed to consider any lesser sanctions although appellees suggested various options in their motion to strike as well as at the hearing.[5] The trial court also failed to indicate why the lesser sanction suggested by appellees, which would have excluded evidence relating only to the particular meter which the

---

4. The District contends that it did not put on evidence at the hearing because of the scope of the hearing as described in the court's scheduling letters and because the hearing was interrupted when the court undertook settlement discussions.

5. Among the sanctions suggested by appellees' counsel at the hearing were the following: dismissal of the suit, an award of attorney's fees, or the striking of all of the evidence related to the meter which was removed.

District allegedly removed, was not a sanction more tailored to the alleged transgression and the claimed prejudice.[6] *See Techniarts, supra,* 572 A.2d at 1054. While appellees proffered evidence demonstrating prejudice to their proof regarding the degree of accuracy of the meter which appellant's removed,[7] the sums in dispute involved periods during which a different meter was in use. The trial court's failure to consider lesser sanctions is sufficient to require a remand. *See LaPrade, supra,* 490 A.2d at 1155–56. Here, it is also apparent that the sanction imposed was greater than necessary under the circumstances. *See Techniarts,* 572 A.2d at 1054. The court's failure to exercise its discretion and the imposition of a sanction too severe for the transgression also require reversal. *Id.*

The record also belies a claim that the District engaged in intentional misconduct in removing the meter for testing. While in hindsight the court concluded that its order clearly required testing on site, an objective review of the language reveals that it is ambiguous. First, the language can be viewed as no more than a recitation of one of the reasons for the continuance, *i.e.,* "to afford an inspector from the District of Columbia an opportunity to inspect the water meter at the premises located at 1458 Columbia Road, N.W., Washington, D.C." Second, the language does not appear to be mandatory. Rather, the provision can be read as an accommodation to the District instead of a directive to it to conduct a test at a certain location. The disputed language also can be interpreted as merely a designation of the location of the meter which the District sought to test. The District's conduct cannot be assessed without reference to applicable local regulations which provide for removal, testing, and repair or replacement of any water meter by the water and sewer department at any time. 21 DCMR §§ 305.6–305.7 (1987). Appellees point out that the trial court had the authority, nevertheless, to order testing at the site, and we do not disagree. However, in light of the ambiguity in the order, the nature of appellant's conduct constituting a violation of the order must be viewed in the context of the manner in which such tests are conducted generally pursuant to regulations.

It is significant that another judge of the court found it necessary to certify the matter to Judge Thompson because of the ambiguity in the order. Whatever the meaning of the order, a full hearing was not held to resolve the ambiguity. Given the uncertainty of the order and the reasonable grounds for disagreement as to its meaning, we conclude that the type of intentional disobedience to the court's order which would warrant the extreme sanction of dismissal is lacking in this case. This is one more factor weighing against an exercise of discretion in favor of dismissal. *See Techniarts, supra,* 572 A.2d at 1055 (in deciding a rule 41(b) motion, court's inquiry should include whether conduct to be sanctioned was willful).

For the foregoing reasons, we reverse and remand the case for a new hearing on the motion to dismiss and for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

**6.** The order does not specify the reasons for the court's ruling, and the record of the hearing is incomplete. Thus, it cannot be gleaned from the record what consideration, if any, the trial court gave to the established criteria for involuntary dismissal. Just before the hearing adjourned, counsel for appellees brought to the court's attention that the hearing was not complete as follows:

> Just for clarification, Mr. Serafin only testified regarding the issue of settlement. If we—if it becomes necessary to argue these motions at a later time, there would be some

additional testimony from Mr. Serafin that we would want to introduce on the motions.

Without a further hearing on the motion, the trial court dismissed the action when the parties' settlement efforts failed. While a motion to dismiss can be decided without a hearing, *see Pagan v. Horton,* 464 A.2d 146, 148 (D.C.1983), where a hearing is granted, both sides are entitled to be heard fully on the motion before the court rules on it.

**7.** Appellant cites deposition testimony which refutes this claim.