**Harold B. PEEK, as Personal Representative, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 88–1109.**

District of Columbia Court of Appeals.

Argued Oct. 19, 1989.
Decided Dec. 6, 1989.

Alan B. Soschin, for appellant.

James C. McKay, Jr., Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellee.

Before NEWMAN and FARRELL, Associate Judges, and GALLAGHER, Senior Judge.

FARRELL, Associate Judge:

The trial court dismissed a complaint filed by plaintiff, Shirtia Edwards, alleging negligence by the District of Columbia (the District) contributing to the death of her two children in a fire that consumed a foster home. Plaintiff brought this action in two counts under the wrongful death and survival statutes. She then failed almost entirely to comply with discovery requests over the next fourteen months; indeed, her attorney lost all contact with her after six months. The trial court therefore

dismissed the complaint with prejudice as a sanction under Super.Ct.Civ.R. 37(b) and 41(b). The court did so, however, still well before the trial date when proceedings had commenced to replace plaintiff as personal representative of the estate of the deceased children. We conclude that because dismissal in these circumstances would exact too severe a cost to heirs or next of kin not responsible for plaintiff's default, that sanction was inappropriate. We accordingly reverse the order of dismissal and remand for trial on the merits.

## I.

On March 23, 1986, fire broke out in a foster home licensed by the District at 4286 Southern Avenue, S.E. Stephanie LeShawn Edwards and Steven Leon Edwards, both minors, were among the persons who perished in the fire. On March 10, 1987, plaintiff, the mother of the two children, was appointed administrator of their estates pursuant to D.C.Code § 20–303 (1989). On March 18, 1987, plaintiff filed suit for damages against the District alleging negligence in the manner in which it had maintained and supervised operation of the foster home. The complaint was in two counts, the first brought under the survival statute, D.C.Code § 12–101 (1989), the second under the wrongful death statute, D.C. Code § 16–2701 to –2703 (1989). The District filed an answer and a counterclaim, to which plaintiff responded on June 11, 1987. On August 7, 1987, the trial court *sua sponte* consolidated the case for trial with two other suits filed against the District as a result of the same fire. The court ordered discovery to be completed by April 1, 1988, and set trial for June 22, 1988.

On September 17, 1987, the District filed a notice of taking oral deposition and request for production of documents, and on September 23 served plaintiff with interrogatories and a request to produce documents, to be complied with in 30 days. Receiving no response within that time, the District then wrote plaintiff a letter demanding compliance, and plaintiff replied

by promising her responses by December 1, 1987. Unrelated to these communications, the trial court on December 1 modified the previous schedule and ordered discovery completed in the consolidated cases by September 1, 1988, with a trial date of October 17, 1988. The court also ordered counsel for all plaintiffs to file a statement by January 4, 1988, on an issue of possible conflict of interest occasioned by the District's counterclaim for indemnity and contribution against the surviving parents.[1]

When plaintiff in this case failed to respond to the discovery requests by January 6, 1988, the District filed a motion to compel discovery and requested costs, including attorney's fees, for its time expended in having to compel discovery. At a February 3 hearing on the motion, counsel for plaintiff stated that he had had no contact with his client since November 1987 and did not know her present whereabouts, but was continuing his efforts to find her. The court therefore postponed the consolidated trial date to October 26, 1988, leaving discovery to be completed by September 1; the plaintiffs' Rule 26(b)(4) statements were to be filed by April 1. The court granted the District's motion for costs and attorney's fees against plaintiff, and directed her to file and serve full responses to the interrogatories and request for documents by February 11, 1988. On April 1, as required, counsel for plaintiff filed the Rule 26(b)(4) statement, relying on the expert witnesses named by the other plaintiffs.

When February 11 passed and plaintiff still had not replied to the District's discovery requests, the District moved on May 2 to dismiss the complaint, contending that plaintiff's disregard for discovery was willful and intentional in that she had failed to maintain contact with her attorney. The District claimed in particular that it could not depose plaintiff because of her absence and the failure of plaintiff and her counsel to resolve the conflict of interest issue previously cited by the court, pending resolution of which the court had stayed plain-

---

**1.** The court further ordered plaintiffs to file statements under Super.Ct.Civ.R. 26(b)(4) relat- ing to proposed expert witnesses by March 1, 1988.

tiff's deposition; and that the District's "inability to discover information is total" because no discovery responses had been received from plaintiff and there was no likelihood any would be forthcoming. The District pointed out that on February 3 counsel for plaintiff had told the court that if he could not locate plaintiff, he would attempt to locate the father of the deceased children and substitute him as personal representative; no such substitution had since been proposed. Any sanction short of dismissal, the District maintained, would subject it to the prospect of severance of the consolidated cases and the expense of separate trials.

In opposing the motion to dismiss, plaintiff's counsel represented that, although he still had not located appellant, "events of the last few days offer promise that he will be able to do so." At the same time, counsel had "located and established contact with" the natural father of the deceased children, and stated that should he still be unable to locate the mother, he would proceed with the father as successor personal representative of the estate. Counsel had recently learned that the father was presently in the custody of the D.C. Department of Corrections at the Lorton Central Facility. He had met with the father on May 14 "and received assurance from him that he wished to proceed in this matter," indicating his willingness to be substituted as personal representative and plaintiff in this lawsuit. Counsel explained that the mother and father together had made the original decision to retain him, and had agreed jointly to have the mother qualify as personal representative and initiate the lawsuit. Counsel described his additional efforts to locate plaintiff using an address furnished by the father, who himself, although incarcerated, was attempting to find the mother. In response to the District's claim of prejudice, counsel pointed out that his theory of liability and the witnesses he intended to call were identical to the theory and proposed witnesses of the plaintiffs in the other cases.[2] Counsel concluded by stating that if he were unable to establish personal contact with plaintiff by May 2, he would petition the Probate Court for leave to substitute the father as personal representative and would then substitute him as plaintiff.

On May 24, 1988, the trial court denied the District's motion to dismiss, pointing to the strong presumption at law that suits be decided on the merits if possible. Taking at face value counsel's "professed optimism" that he would be able to locate plaintiff or alternatively obtain a substitute party as personal representative, and acknowledging that counsel had initially been retained by the father as well as the mother, the court extended until June 16 the deadline by which either plaintiff or a substitute personal representative must provide full discovery, otherwise the District could renew its dismissal motion. Moreover, believing that plaintiff had "fail[ed] to file any Rule 26(b)(4) statements reflecting her allegations as to damages or liability," the court ordered that plaintiff was "precluded from calling any expert witnesses with regard to liability or damages."[3]

On June 20, 1988, the District again moved to dismiss, claiming that despite the court's May 24 ultimatum, no discovery had been received and no one had been substituted as personal representative of the estate. Plaintiff's counsel answered by representing that when he had still been

2. Counsel also addressed the potential conflict of interest issue on which the court had ordered briefing, explaining *inter alia* that "when Ms. Edwards [plaintiff] and Mr. Branch [the father] met with him shortly after the fire and signed retainer agreements, this issue was briefly discussed and at that time both individuals, who were previously acquainted with counsel, indicated that they wished for counsel to handle all matters arising out of the fire as they had common interests."

3. In fact, plaintiff's counsel had filed a Rule 26(b)(4) statement on April 1 incorporating by reference the expert statements filed by the other plaintiffs. The District contended in its motion to dismiss that this statement failed to comply with the rule. The merits of the trial court's exclusion of all expert witnesses in behalf of plaintiff are not before us, however, as plaintiff did not seek leave to appeal that order and has not argued in the present appeal that the order was an abuse of discretion.

unable to locate plaintiff, he told the Probate Division of the situation and was informed that, given the father's status as an incarcerated felon, he was not eligible to act as a successor personal representative. Counsel filed a motion in the Probate Division setting forth his inability to locate plaintiff and requesting her removal as personal representative. Given the urgency of the matter, he was assured by Probate officials that the matter would be placed on the Summary Calendar to be heard in July, though as of the date of counsel's opposition, July 2, he had not been notified of the date of the hearing.[4]

On July 20, 1988, the trial court granted the District's motion to dismiss. It recited plaintiff's complete failure to comply with discovery over the past year, even after the ultimatum issued in the May 24 order, and noted plaintiff's counsel's admission that he still could not locate plaintiff and had not obtained a successor personal representative. The court accepted the District's conclusion "that the only person interested in presenting [the] case is the attorney." It therefore dismissed the complaint as a sanction under Super.Ct.Civ.R. 37(b) and 41(b) for failure to comply with discovery.

## II.

"Appellate review of a court's imposition of Rule 37 sanctions, including the ultimate sanction of dismissal, is confined to determining whether or not the court abused its discretion in imposing a particular sanction or set of sanctions." *Hinkle v. Sam Blanken & Co.*, 507 A.2d 1046, 1048 (D.C. 1986). Although it is well settled that "the dismissal sanction should be granted only upon a showing of severe circumstances,"

*id.* at 1049 (citations and internal quotation marks omitted), this court has sustained orders of dismissal when disregard of the rules and orders of the court pertaining to discovery has been as flagrant as it was here, within a comparable time-frame. *E.g., id.* at 1050 (failure over eight months to answer requests for interrogatories and attend depositions even after court order directing compliance); *Firestone v. Harris*, 414 A.2d 526, 527 (D.C.1980) (dismissal six and one-half months after interrogatories served for failure to provide complete answers despite court order); *Himmelfarb v. Greenspoon*, 411 A.2d 979, 981–82 (D.C. 1980) (dismissal nineteen months after interrogatories served following two orders to file adequate answers). Moreover, in general it is not an excuse for failure to provide discovery that counsel has been unable to locate his or her client. *Coleman v. Lee Washington Hauling Co.*, 392 A.2d 1067, 1070–71 & n. 1 (D.C.1978) (dismissal upheld as "willful failure" to make discovery where interrogatories unanswered because counsel could not locate appellant).

In the unusual circumstances of this case, however, we are unable to sustain the order of dismissal. Plaintiff brought the wrongful death count as administrator of the estate and the survival count as legal representative of the deceased children.[5] At stake in the dismissal sought by the District, therefore, were the interests not only of plaintiff but potentially of others, including the children's father, who bore no responsibility for the mother's default in pursuing the claims. The trial court commendably recognized these interests on May 24 when it denied the motion to dismiss in view of plaintiff's counsel's repre-

---

4. On August 29, 1988, a summary removal hearing was held in the Probate Division and plaintiff was removed as personal representative of the children's estate. On September 1, 1988, attorney Harold B. Peek was appointed her successor. On March 7, 1989, Peek was ordered by this court to be substituted as appellant in place of plaintiff below.

5. By statute, an action for wrongful death may be brought only by the "personal representative of the deceased person," D.C.Code § 16–2702 (1989), acting for the sole benefit of "the spouse

and the next of kin of the deceased person...." *Id.*, § 16–2701. *See Cole, Raywid & Braverman v. Quadrangle Dev. Corp.*, 444 A.2d 969, 971 (D.C.1982). Under the survival statute, suit may be brought by "the legal representative of the deceased," D.C.Code § 12–101 (1989), which "may be any person who, whether by virtue of testamentary act or operation of law, stands in the place of the decedent with respect to his property...." *Strother v. District of Columbia*, 372 A.2d 1291, 1296 (D.C.1977).

sentation that he intended to obtain substitution of another as personal representative of the estate if his final efforts to locate the mother were unsuccessful. The problem before us arises because the court then gave counsel a deadline by which either to complete discovery or to replace plaintiff as representative that as a practical matter could not be met. As counsel later told the court, he had explained his need for expedition to the Probate Division, but the best he could obtain was placement of his request for removal of plaintiff on the Summary Calendar for July, well past the June 16 deadline. Even if the matter could have been set down in early June, moreover, Super.Ct.Prob.R. 121 requires procedures for removing a representative and appointing a successor, including notice, that could not feasibly have been met in two weeks.[6] In these circumstances, we conclude that the trial court's own judgment on May 24 that dismissal was inappropriate reasonably called for greater tolerance of the inevitable delay in obtaining a successor representative. We reach that conclusion with some reluctance, for we do not wish to be perceived as rewarding plaintiff, who presumably would share in any recovery against the District despite her own abandonment of the cause. But in circumstances where the scheduled trial date was still three months away, and proceedings were underway to substitute another individual as personal representative and plaintiff in the case, we hold that dismissal was premature and excessive in view of the class of persons affected thereby.

Our decisions, besides holding that dismissal may be resorted to "only in cases of the most egregious violations of the discovery process," *Braxton v. Howard Univ.*, 472 A.2d 1363, 1366 (D.C.1984), establish that an order of dismissal will be reversed where "the trial court imposes a sanction which is too strict or is unnecessary under the circumstances." *Vernell v. Gould*, 495 A.2d 306, 311 (D.C.1985). In this case, the trial court was sensitive to the need to impose lesser sanctions whenever possible. In February 1988 the court granted the District's request for costs, and on May 24, while denying the motion to dismiss, it imposed the lesser—but still severe—sanction of excluding all expert testimony from plaintiff's case because of her perceived failure to file a Rule 26(b)(4) statement. *See* note 3, *supra.* In such a case, an appellate court is properly hesitant to declare that the trial court erred in deciding that the next sanction required was dismissal when plaintiff still failed to comply with the court's order. In the present case, however, we deal not only with the court's obligation to enforce the rules of discovery. It is also the court which appoints a personal representative as trustee in behalf of the decedent's estate and surviving heirs. In that capacity, the court can fairly be said to retain at least some obligation to insure that their interest is not forfeited by the neglect of the person pursuing the action in a representative role. Since replacement of plaintiff was actively being pursued and could be expected to bear fruit without substantially affecting the scheduled trial date, we hold that dismissal was unnecessary under the circumstances.

Finally, and for reasons already partly stated, the District's argument that dismissal was the only remedy commensurate with the prejudice it had suffered is unpersuasive. Prejudice is, of course, a relevant factor in evaluating the propriety of dismissal. *Vernell, supra,* 495 A.2d at 311; *Braxton, supra,* 472 A.2d at 1365. The District argued to the trial court that further delay required to appoint a successor representative would expose it to the risk of de-consolidation and successive trials, entailing multiplied costs and possible loss of witnesses. As already observed, how-

---

**6.** Although plaintiff's counsel represented that the father would agree to appointment of a third party as successor representative (the father himself being presently disqualified), as an heir at law the father presumably was entitled to notice and an opportunity to be heard regarding removal of plaintiff and appointment of a successor. *See* Super.Ct.Prob.R. 123 (petition for termination must be served on all heirs); Super.Ct.Prob.R. 6 (heirs at law entitled to notice of petition for letters of administration).

ever, when the court dismissed the complaint, trial was still three months in the future, and so the risk of separate trials remained somewhat speculative. Moreover, we note that it was not the District which sought consolidation of the cases for trial; the court had done so *sua sponte*.[7] The District also argued that its inability to depose the plaintiff (and her failure to answer interrogatories) made it difficult to prepare a defense to claimed damages in the form of loss of prospective economic benefit. Insofar as those claims were expected to rest on expert projections as to probable earning capacity of the children, however,[8] the court's exclusion of expert witnesses from plaintiff's case already remedied the prejudice. Moreover, since the children had lived in a foster home for an undetermined period, the District itself possessed substantial information concerning the children's educational progress and similar characteristics relevant to their future potential. The prejudice which the District cited to the trial court was thus insufficient to support the severe remedy of dismissal.[9]

### III.

The order of the trial court dismissing the complaint is

*Reversed.*

---

**7.** Indeed, in light of the trial court's exclusion of any expert testimony in plaintiff's behalf, one may be pardoned for wondering whether the District's interests would have been best served by a joint trial in which plaintiff's case drew possible sustenance from the experts of the other plaintiffs.

**8.** *See, e.g., Hughes v. Pender,* 391 A.2d 259, 263 (D.C.1978).

**9.** Our reasons for holding that dismissal was excessive under Rule 37(b) pertain equally to dismissal on the authority of Rule 41(b), which we have "repeatedly held ... [to be] a drastic remedy [that] should be granted sparingly." *Hackney v. Sheeskin,* 503 A.2d 1249, 1253 (D.C. 1986).