*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0537

ERIC HASBROUCK, APPELLANT,

V.

BERNSTEIN MANAGEMENT CORPORATION, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(2019-CA-006286-V)

(Hon. Hiram E. Puig-Lugo, Trial Judge)

(Submitted October 26, 2023                          Decided April 4, 2024)

*Eric Hasbrouck*, pro se.

*Mark D. Palmer* for appellee.

Before EASTERLY and DEAHL, *Associate Judges*, and FISHER, *Senior Judge*.

DEAHL, *Associate Judge*: Eric Hasbrouck sued Joshua Bernstein for injuries arising out of an auto collision between the two of them. On what was scheduled to be the first day of trial, Hasbrouck was not present when the trial was scheduled to begin at 9:30 a.m., despite the court's instructions to arrive by 9:00 a.m. After

waiting until 9:40 a.m., the trial court dismissed Hasbrouck's suit for want of prosecution under D.C. Superior Court Civil Rule 41(b).

Hasbrouck appeared in the courtroom shortly thereafter, at 9:57 a.m. He was informed by the courtroom clerk that his case had been dismissed for want of prosecution. Hasbrouck then filed a timely motion asking the court to vacate its dismissal order. *See* D.C. Super. Ct. Civ. R. 41(b)(3) (Rule 41 dismissals do not take effect for fourteen days and "must be vacated" upon "showing good cause why the case should not be dismissed"). He explained that he called the courthouse's main information line at 9:04 a.m. to alert the court that he was running late. The trial court declined to vacate its dismissal after concluding that Hasbrouck failed to demonstrate good cause for his tardiness. Hasbrouck now appeals, arguing that the trial court abused its discretion in refusing to vacate its dismissal. We agree.

Contrary to the trial court's reasoning, the good cause inquiry under Rule 41 does not reduce to whether Hasbrouck had good reason for being late, but instead concerns whether his tardiness on one occasion justified the outright dismissal of his suit. It did not. The trial court's failure to consider lesser sanctions and the lack of any finding that Hasbrouck was intentionally (or habitually) late to court are fatal to the trial court's ruling. We therefore reverse, vacate the dismissal order, and reinstate Hasbrouck's suit.

**I.**

Hasbrouck and Bernstein were involved in an automobile collision while Bernstein was driving one of his company's vehicles.[1] Hasbrouck, proceeding pro se, filed suit near the tail end of the three-year limitations period, seeking compensation for physical injuries allegedly arising out of Bernstein's negligent driving. Trial was originally scheduled to begin in August 2021, but the trial court moved that date back twice—by about ten months in total—when it appeared that Hasbrouck was not ready to proceed. The first continuance moved the trial date from August 2021 to April 2022, and it was prompted by the fact that two of Hasbrouck's witnesses required interpreters who were not available on the short notice he provided in advance of the initial trial date. Then at a trial readiness hearing in advance of that April date, Hasbrouck indicated that he was "as ready as [he could] be" to proceed to trial, but nonetheless requested some additional time to prepare because he was in the midst of eviction proceedings and other personal matters that had hampered his preparations. The trial court granted that request and scheduled the trial for June 21, 2022, but added that "there's not going to be any possibility of any further continuances."

---

[1] Bernstein's vehicle was owned by Bernstein Management Corporation, which was also named as a defendant in Hasbrouck's suit. We refer to both Bernstein and his company as "Bernstein" throughout this opinion.

A week before the trial was scheduled to begin in June, the court held another readiness hearing. Hasbrouck indicated that he was still dealing with eviction proceedings, making it difficult for him to prepare for and participate in a trial, but nonetheless said he was ready to proceed and "would probably rather do [the trial] now than do it later." Hasbrouck twice confirmed that he was not requesting a continuance, though the trial court had already seemingly taken that option off the table. Hasbrouck also informed the court of his desire to wear a powered air-purifying respirator system during the trial in order to reduce his risk of contracting COVID-19. To assuage Hasbrouck's concern about being permitted to enter the courthouse wearing his respirator system, the judge issued an order authorizing Hasbrouck to wear the equipment to trial. The order included a direct phone number and email address for the judge's chambers, and it directed courthouse security to contact chambers if there were "any questions or issues" upon Hasbrouck's entry. The trial court also repeatedly instructed both parties to arrive by 9:00 a.m. on the first day of trial, which was thirty minutes before when the docket indicated that trial was scheduled to begin.

On the first day of trial, Hasbrouck failed to arrive by 9:00 a.m. After waiting until 9:40 a.m., the trial court called the case and offered the following:

> All right. It is 9:40. The parties were instructed to be here
> at 9:00, and I have been here since 9:00. [Bernstein's

> counsel] and Mr. Bernstein have been sitting outside the courtroom since 9:00. Mr. Hasbrouck is not here. We checked to see whether he had emailed or called chambers. There are no communications from him. I went downstairs. I did not see anybody coming through security wearing the particular protective equipment that he was authorized to use when he entered the courthouse.

The trial court then asked Bernstein's counsel if he had any requests, and counsel moved for dismissal, which the court granted. The court dismissed the case "for want of prosecution."

While there were no further proceedings that day, the docket reflects that Hasbrouck arrived in the courtroom at 9:57 a.m. The courtroom clerk told Hasbrouck that his case had been dismissed at 9:40 a.m. because he had not appeared, while Hasbrouck explained that he had called the "Court Information line" because he was running late. Beyond that docket entry, the trial court issued a written order that same afternoon, stating: "This case was set before the Court for a Trial at **9:00am/9:30 am** . . . and was called at **9:40am**. Plaintiff(s) did not appear **until 9:57 am**." The order stated the case was dismissed under Rule 41(b) for want of prosecution and noted that the dismissal would not take effect for fourteen days and would be vacated upon the granting of a motion filed by Hasbrouck showing good cause why the case should not be dismissed. While the dismissal was ostensibly "without prejudice," the statute of limitations had expired since

Hasbrouck initially filed suit, so that it largely functioned as a dismissal with prejudice.

Hasbrouck timely filed a motion to vacate the dismissal order within fourteen days, offering a laundry list of reasons why he was late to court, including: (1) he was in the midst of eviction proceedings, (2) he couldn't find his keys because his belongings were scattered while he was in the process of moving out, (3) something he ate "suddenly did not agree with him" so that he had to use "the vin," delaying his departure once he did find his keys, (4) traffic was bad, (5) courthouse security held him up, and (6) he couldn't locate the courtroom. Hasbrouck also noted that he called the court at 9:04 a.m. to say that he was running late and that he was told that trial was not set to begin until 9:30 a.m.—as the docket reflected—and that court staff indicated that they would inform the judge that he "may be running late."

The trial court denied Hasbrouck's motion to vacate the dismissal. It noted that (1) Hasbrouck had previously mentioned his eviction proceedings but nonetheless indicated that he was ready to proceed to trial, (2) Hasbrouck did not contact the trial judge's personal chambers by phone or email to explain that he was running late, and (3) while Hasbrouck did call the court's main information line at 9:04 a.m., he was already four minutes late by the time of that call. "In sum," the trial court concluded, the "parties were told to appear at 9:00 a.m.," and "[n]ot only

did [Hasbrouck] not appear on time, he did not provide any updates on his whereabouts despite having the tools to do so." And so, the court reasoned, there was not "good cause to vacate the Rule 41(b) dismissal." Hasbrouck now appeals.

## II.

Hasbrouck contends on appeal that the trial court erred when it did not vacate its dismissal order. He argues that the court should have considered alternatives less drastic than dismissal, and in any event, his tardiness did not warrant an outright dismissal of his suit. Bernstein counters that the trial court's actions were "a proper and appropriate exercise of [its] discretion" given Hasbrouck's "failure to appear for trial at the scheduled time" or "to notify the trial court of his intentions and whereabouts." Bernstein also stresses that "41 minutes had already passed from the time that the parties had been instructed to appear" and when the trial court dismissed the suit.

Although a trial court has the authority to dismiss an action when a plaintiff fails to prosecute their case, Super. Ct. Civ. R. 41(b)(1), doing so is an "extreme sanction" which should be imposed "only sparingly or in extraordinary circumstances," given the strong preference that cases be decided on their merits. *District of Columbia v. Serafin*, 617 A.2d 516, 519 (D.C. 1992) (per curiam) (citations omitted). While we review Rule 41(b) dismissals under the deferential

abuse of discretion standard, we have cautioned that decisions to dismiss for want of prosecution "must be undertaken with care," *id.*, and should be made "only after the trial court has considered lesser sanctions," *Techniarts Video, Inc. v. 1631 Kalorama Assocs.*, 572 A.2d 1051, 1054 (D.C. 1990).

Hasbrouck is challenging the trial court's failure to vacate its dismissal order rather than the decision to dismiss in the first place, but the standards for reviewing those decisions are the same. *Baba v. Goldstein*, 996 A.2d 799, 802 (D.C. 2010) (we review "whether good cause existed for vacating the dismissal under Rule 41(b) . . . as we would a Rule 41(b) [dismissal] in the first instance").[2]  In ruling on Rule 41(b) motions, either in the first instance or in considering a motion to vacate, trial courts should consider a variety of factors, including "(1) the nature of the party's conduct, including whether it was willful; (2) the length of any delay in complying with the court's order; (3) the reasons for the delay; and (4) any prejudice to the opposing party." *Landise v. Mauro*, 141 A.3d 1067, 1077 (D.C. 2016) (quoting *Serafin*, 617 A.2d at 519).

---

[2] We do not opine on whether the trial court's initial dismissal was appropriate in this case, and are instead focused on its refusal to vacate that order.  In ruling on the motion to vacate the dismissal, the trial court had more information before it than it did when it initially dismissed, such as (1) that Hasbrouck arrived in court at 9:57 a.m., (2) that he had contacted the court at 9:04 a.m. to say he was running late, and (3) the court had heard Hasbrouck's explanations for his tardiness by that later point.

The trial court's failure to so much as consider those relevant factors—or any lesser sanctions—in denying the motion to vacate is a standalone basis for vacating the dismissal order and remanding the case. *Serafin*, 617 A.2d at 520 ("The trial court's failure to consider lesser sanctions is sufficient to require a remand."); *LaPrade v. Lehman*, 490 A.2d 1151, 1155-56 (D.C. 1985) (noting that "the trial court should first resort to the wide range of lesser sanctions which it may impose" (quotation omitted)). The trial court's initial ruling dismissing the case, like its written dismissal issued mere hours later, did not consider any of the factors listed above and did not contemplate any lesser sanctions. It dismissed on the sole basis, and without further explanation, that Hasbrouck showed up some minutes late to court. That itself would not be fatal to the court's subsequent decision not to vacate its dismissal order, as it seemingly could have remedied those failings in its initial order. But it failed to do so. In denying the motion to vacate, the court again gave no consideration to lesser sanctions and largely ignored the relevant factors highlighted above, reasoning only that Hasbrouck's blameworthy failure to show up on time, coupled with his failure to contact chambers directly, merited dismissal of his suit. In effect, the court exalted the third factor outlined above—the "reasons for the delay"—and ruled that any negligent failure to appear on time merited dismissal.

That is wrong and cannot be squared with our precedents. *See, e.g., Ali v. Xing*, 708 A.2d 266, 267 (D.C. 1998) (per curiam) (reversing dismissal of a

complaint as a sanction for the "certainly negligent" arrival of counsel twenty minutes late to trial).[3] Both this court's precedents and those from other jurisdictions instruct that a single instance of tardiness, absent any finding that the party was deliberately late, will not justify the outright dismissal of a case. *See, e.g.*, *id.*; *Peterson v. Archstone Communities LLC*, 637 F.3d 416, 417 (D.C. Cir. 2011) (reversing dismissal after plaintiff failed to appear at a motions hearing because "[t]he court had not previously found [plaintiff] disobedient or dilatory, did not attempt lesser sanctions, and failed to explain why the case-ending sanction of dismissal was necessary"); *Washington v. First Choice Trucking*, 953 So. 2d 107, 111 (La. App. 2007) (reversing dismissal for want of prosecution where plaintiff's "action was dismissed because he was approximately thirty to forty minutes late for his trial. He explained his lateness by stating he was lost. No evidence was presented to show the excuse he articulated was fabricated," and his tardiness was apparently "the result of an unintentional error in locating the building where the

---

[3] While *Ali* involved a dismissal with prejudice, whereas the trial court dismissed Hasbrouck's suit without prejudice, that is an illusory distinction here. The limitations period on Hasbrouck's claims had run so that any attempt to refile his suit would be barred (at least if Bernstein raised a statute of limitations defense). *See Crosby v. Brown*, 289 A.3d 696, 698 (D.C. 2023) (dismissal without prejudice entered after limitations period had run "likely amounted to a dismissal with prejudice"). We do not rule out the possibility that a dismissal without prejudice would have been an appropriate sanction had the limitations period not already run. *See Wolfe v. Fine*, 618 A.2d 169, 174 n.11 (D.C. 1992) (suggesting dismissal without prejudice as an acceptable lesser sanction to dismissal with prejudice where "[t]he statute of limitations had not yet run").

hearing was scheduled to commence"); *Poore v. Poore*, 285 So. 3d 852, 857 (Ala. Civ. App. 2019) (dismissal for twice failing to appear at scheduled trial date was unwarranted where there was no indication of deliberate delay or a prior warning that dismissal would follow future tardiness).

We do not stop at vacating and remanding for further consideration, however, because we agree with Hasbrouck that under any reasonable weighing of the relevant factors vacatur of the dismissal order was required in this case.

First, as to the "nature of [his] conduct, including whether it was willful," this appears to have been an isolated instance where nothing in the record or the trial court's rulings suggests that Hasbrouck was either deliberately late to court or in the habit of arriving late to court during the years-long proceedings. *LaPrade*, 490 A.2d at 1155 (dismissal is appropriate sanction "only upon clear evidence of deliberate delay, or upon a showing of contumacious conduct by the plaintiff" (quotations omitted)); *Techniarts Video*, 572 A.2d at 1055 (reversing dismissal where the trial court failed to specify actions akin to willful misconduct); *Landise*, 141 A.2d at 1077 ("Dismissal should not be imposed where the failure of a party to comply with the order is inadvertent." (quotation omitted)). It is also undisputed that Hasbrouck called the court at 9:04 a.m. to alert it to his tardiness, which has some mitigating force. While the trial court faulted Hasbrouck for not contacting chambers directly,

despite having the chamber's direct phone number and email address, that failing does not transform Hasbrouck's apparent negligence into deliberateness, nor does it substitute for an actual finding of deliberateness.[4]  It should also be noted that the trial court had previously (on August 28, 2020) issued an order directing Hasbrouck to "refrain from emailing or calling chambers," an order that the court betrayed no knowledge of when faulting Hasbrouck for failing to contact chambers directly.

Second, "the length of any delay in complying with the court's order" was minimal, as Hasbrouck was mere minutes late to court.  That is true whether Hasbrouck's tardiness is measured against the start of trial (in which case he was twenty-seven minutes late), or against the court's directive to arrive at 9:00 a.m. (in which case he was fifty-seven minutes late).

Third, while we agree with the trial court that Hasbrouck's "reasons for the delay" were not so compelling as to be fully exonerating, neither were they so outlandish as to arise to "contumacious conduct."  *LaPrade*, 490 A.2d at 1155

---

[4] In declining to vacate its dismissal order, the court noted that "[c]uriously, [Hasbrouck] left a voicemail for Chambers [after the case was dismissed], but fails to explain why he did not contact Chambers by phone or email prior to" when he was expected in court on the trial date.  This might be read as a suggestion that Hasbrouck deliberately failed to contact chambers directly, but that is not entirely clear, and in either case it is certainly not a finding that Hasbrouck was deliberately late to court.

(quotation omitted). There is no indication that he was deliberately late to court or acting with wanton disregard for that possibility.

Fourth, so far as the record discloses, the "prejudice to the opposing party" was minimal to non-existent. Neither Bernstein nor the trial court identified any concrete prejudice attendant to Hasbrouck's tardiness. Although the minutes-long delay was no doubt an inconvenience to Bernstein, his counsel, and any witnesses he might have summoned to court that day, it is the type of routine delay that often arises in court proceedings. They could hardly have been surprised or aggrieved if the court had simply had another matter to attend to until 9:57 a.m.

We are of course mindful and acutely aware of the difficulties that delays cause the judicial system. We do not doubt that the trial court could have sanctioned Hasbrouck for his tardiness to some limited degree, perhaps by assessing "costs and reasonable fees against" him attendant to the matter of minutes that he had wasted of the court's and the opposing party's time. *LaPrade*, 490 A.2d at 1156 (suggesting this as a potential lesser sanction). And on remand we do not rule out the possibility that the trial court may yet consider imposing such a lesser sanction, but it would need to be commensurate with the offense. The outright dismissal of Hasbrouck's

suit was not that.  We therefore vacate the dismissal of Hasbrouck's suit and direct that it be reinstated.[5]

## III.

For the foregoing reasons, the trial court's denial of Hasbrouck's motion to reinstate pursuant to Rule 41(b) is reversed, and the matter is reinstated and remanded for further proceedings.

*So ordered.*

---

[5] We decline Hasbrouck's request to reassign this case to a new judge, as we find no basis in the record for such relief.  The error here does not raise any serious specter of judicial bias, nor has Hasbrouck pointed to any other evidence of bias that would warrant this court interceding and directing such a reassignment.